# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1) BNSF RAILWAY COMPANY, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>1) CITY OF MOORE, OKLAHOMA )<br>)<br>Defendant. ) | CASE NO. CIV-20-714-J |

## COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

Plaintiff BNSF Railway Company ("BNSF") submits its Complaint for Declaratory Judgment and Injunctive Relief against Defendant City of Moore, Oklahoma ("Defendant" or "City"), and further alleges and states:

### Nature of the Action

1. BNSF prides itself on its ability to work together with cities, states, and municipalities across the country to accommodate the various public needs that arise in the vicinity of its thousands of miles of rail lines. At the forefront of this cooperation, however, is BNSF's unalterable commitment to rail line safety and its duty to support the seamless movement of commerce that is so vital to this nation's economy and ultimately the public interest. In this case, BNSF has been forced to abandon its preferred route of cooperation and bring the current action because the City intends to condemn a portion of BNSF's railroad right-of-way in order to construct and/or improve State Highway 37 (a/k/a 4th Street) in Moore, Oklahoma ("4th Street Project"). BNSF owns and operates an interstate railroad that is crossed by State Highway 37. The apparent purpose of the 4th

1

...

Street Project is to alter the grade of State Highway 37 so that the highway will pass underneath BNSF's rail line, and in pertinent part, the City seeks to condemn a portion of BNSF's property to locate a pump station within the railroad right-of-way. In addition to seeking to condemn BNSF's right-of-way, the City has brought a separate application before the Oklahoma Corporation Commission seeking to assess 100% of the cost of the 4th Street Project to BNSF, including the cost of the property it now seeks to obtain from BNSF.

2. Putting aside the City's lack of authority to condemn for the alteration of a state highway it does not own or control, if executed, the 4th Street Project would redirect a substantial amount of stormwater onto BNSF's active operating right-of-way, causing substantial interference with current and future rail operations. Among other things, the location of the pump station would restrict future rail operations, and the water discharged by it would impact existing railroad drainage, impose additional burdens on maintenance and operations, and create railroad safety hazards by eroding BNSF's roadbed and affecting track structures, causing embankment instability and track outages. BNSF cannot risk the safety of those who travel on or near its tracks, nor can it risk the substantial delays in rail shipments that would accompany numerous track outages. Accordingly, BNSF brings the current action.

3. BNSF seeks a declaration that the City's purported authority to condemn the subject railroad property under state law is preempted by the Interstate Commerce Commission Termination Act of 1995 ("ICCTA"), 49 U.S.C. § 10101, *et seq.*, to the extent that the City seeks to use such authority to take land owned by BNSF for the

operation of its interstate railroad. In addition, BNSF seeks a declaration that the City's authority to condemn the subject railroad property is preempted by the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20101, et seq., to the extent the City seeks to use such authority in a manner which will affect and impose additional burdens on the structure and drainage of BNSF's railroad right of way. Moreover, BNSF seeks a declaration that the City does not have the right of eminent domain in this case for numerous reasons: first, that the taking of land that will materially impair BNSF's rail operations is prohibited, it having long been the law in Oklahoma that a city cannot condemn property already devoted to public use if such condemnation would be inconsistent with the purposes for which the property is already being used. Second, that the City seeks to condemn land for the purpose of altering a state highway, which a city incorporated under the laws of Oklahoma lacks the power to do. Third, the that City lacks a proper "public use" under the Fifth Amendment's Takings Clause, as the only purpose of this taking is a project that is prohibited by state and federal law. For all these reasons, BNSF also seeks an injunction to maintain the status quo and avoid the imminent and irreparable harm threatened by the City's actions, for which there is no adequate remedy at law.

## Identification of the Parties

4.     BNSF is a corporation organized under the laws of the State of Delaware and has its principal place of business in Fort Worth, Texas. BNSF is a common carrier by rail engaged in interstate commerce.

5. The City of Moore is a municipal corporation incorporated under the laws of the State of Oklahoma.

## Jurisdiction and Venue

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, which grants district courts original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States. This Court further has jurisdiction over this action pursuant to 28 U.S.C. § 1337, as this action arises under an Act of Congress regulating commerce, specifically rail transportation under ICCTA. This Court further has jurisdiction over this action pursuant to 28 U.S.C. § 1343(a)(3), as this action seeks redress for a threatened deprivation under color of state law of a right secured by the Constitution of the United States, specifically the Takings Clause of the Fifth Amendment.

7. This court also has subject matter jurisdiction to adjudicate the supplemental state law claims that arose out of the same course of conduct giving rise to the principal claims of BNSF as stated below, pursuant to 28 U.S.C. § 1367.

8. This court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because: (a) the amount in controversy exceeds $75,000, exclusive of interest and costs; and (b) there is complete diversity between BNSF and the City.

9. Venue is proper in the Western District of Oklahoma in accordance with 28 U.S.C. § 1391 in that the City is a resident of this District, a substantial part of the events

or omissions giving rise to the claim occurred in this District, and the real property that is the subject of the action is situated within this District.

## Factual Allegations

10. State Highway 37 is locally known as 4th Street through the City of Moore, but remains a state route under the exclusive control of the Oklahoma Department of Transportation ("ODOT") pursuant to Oklahoma law.

11. The City first discussed possible alterations to the grade of State Highway 37 to establish an underpass of the road below BNSF's rail lines with ODOT and BNSF in 2016. Subsequently, however, the City did not advance discussions with either ODOT or BNSF until late last year.

12. ODOT has not granted the City permission or authority to make the changes to State Highway 37 it proposes for the 4th Street Project.

13. Notwithstanding, on March 4, 2020, the City filed an Application with the Oklahoma Corporation Commission requesting that it exercise jurisdiction and utilize its discretionary powers to assess 100% of the cost of the 4th Street Project to BNSF.

14. The City's Application is currently pending before the Oklahoma Corporation Commission.

15. On June 23, 2020, the City directed a letter to BNSF setting forth an offer to purchase certain portions of real property within BNSF's right-of-way. *See* City of Moore Offer Letter to Purchase Right-of-Way from BNSF for 4th Street Underpass Project, attached hereto as Exhibit 1.

16. In that letter, the City offered BNSF $175,450 for a permanent right-of-way easement in Parcel 6, a utility easement in Parcel 6.1, a permanent right-of-way easement in Parcel 11, and a utility easement in Parcel 11.1. *See* Appraisal Review for City of Moore SE 4th Street Underpass, attached hereto as Exhibit 2.

17. The permanent right-of-way easement in Parcel 11 includes an "L" shaped piece of land on the south side of Highway 37 that will house a pump station to redirect stormwater from the highway underpass.

18. BNSF has reviewed the plans for the 4th Street Project and it believes the City's plan would redirect a substantial amount of stormwater from the underpass onto BNSF's right-of-way, including areas used for active interstate rail operations.

19. For instance, the 4th Street Project would significantly change the existing drainage area boundaries. The BNSF right-of-way area where the City proposes to build a pump station currently receives water from a drainage area of 4.44 acres. The 4th Street Project would more than triple that amount to 13.46 acres.

20. This negatively impacts BNSF operations by increasing discharge rates; increasing frequency and duration of discharge flowing along the track embankment, potentially causing erosion and subgrade saturation; and increasing maintenance requirements and frequency to address erosion, sediment deposits, debris, and roadbed settlement.

21. Moreover, BNSF has a modest ditch on the east side of its rail line that is used to move stormwater. The existing discharge capacity of the ditch is approximately 16.0 cubic feet per second ("cfs"), which is sufficient to allow for the safe drainage of

BNSF's roadbed. However, under the plans for the 4th Street Project, preliminary estimates indicate the proposed discharge of the pump station would be nearly five times higher at 75.59 cfs. The City is currently planning on using BNSF's existing ditch as the sole method of redirecting the pump station's discharge, substantially interfering with BNSF's downstream rail operations.

22. The existing BNSF ditch does not have the capacity for the proposed pump station discharge. This imbalance in capacities would be expected to saturate BNSF's roadbed, preventing proper drainage designed for rail operations, destabilizing and eroding BNSF's roadbed. These effects will substantially and negatively impact interstate rail operations by affecting maintenance and potentially causing track outages due to track embankment stability. Further, increased discharge caused by the City's plan would likely affect other downstream property owners as the additional flows depart from BNSF right-of-way onto other private property.

23. Finally, the design and placement of the pump station on BNSF property will have a significant impact on BNSF's ability to expand future rail operations. While the proposed plans for the 4th Street Project purport to add capacity for a future third track over the proposed underpass, the placement of the pump station on BNSF right of way is incompatible with any such future expansion. The installation of a third main track at this location would increase transportation efficiency and permit capacity to serve both freight customers and additional passenger traffic as needs arose, but would be substantially and negatively impacted by the condemnation sought by the City, if not prevented altogether.

24. All told, the 4th Street Project would materially, substantially, and negatively impair BNSF's operations and use of its right-of-way.

25. The City informed BNSF that it would allow BNSF thirty (30) days to consider its offer before the City would commence a condemnation action in the Cleveland County District Court, State of Oklahoma.

26. BNSF is unwilling to accept the City's offer.

## COUNT I
### (Declaratory Judgment – ICCTA Preemption)

27. BNSF incorporates by reference and re-alleges the information set forth in paragraphs 1-26.

28. ICCTA, enacted in 1995, vests the Surface Transportation Board ("STB") with exclusive jurisdiction over transportation by rail carriers and operation of their facilities, and preempts other remedies provided under Federal or state law:

> The jurisdiction of the Board over (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State, is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.  49 U.S.C. § 10501(b).

29. BNSF is a "rail carrier," as defined by ICCTA, engaged in interstate rail transportation.  49 U.S.C. § 10102.

30. BNSF's freight and intermodal rail transportation operations in the City of Moore fall within the exclusive jurisdiction of the STB, under ICCTA. 49 U.S.C. § 10102.

31. Condemnation of railroad operating property constitutes state regulation of rail transportation, and is pre-empted under ICCTA.

32. The City's actions in seeking to take BNSF's property will have a substantial and adverse effect on BNSF's interstate rail operations, including but not limited to, the loss of its future possessory right to BNSF's right-of-way over the land sought by the City, the loss of other property within BNSF's right-of-way caused by the relocation of facilities currently existing on the land sought by the City, the increased cost of managing rail operations through a reduced right of way and capacity, the inability to provide for future capacity or to reconfigure rail facilities within BNSF's right-of-way, the loss of a contiguous parcel of land over which to operate and expand over BNSF's right-of-way, the shifting of land acquisition costs for future rail expansion from the City to BNSF, the redirection of substantial amounts of stormwater onto BNSF's right-of-way that will cause erosion on BNSF's roadbed and potentially cause embankment instability and track outages, and the limiting of BNSF's ability to add a third main track without having to address the additional discharge from the 4th Street Project for which the City has no plan.

33. Each of these adverse effects unreasonably interferes with the safe, efficient, and economic operation of BNSF's interstate freight rail transportation operations that run through the proposed 4th Street Project.

34. The City's actions in seeking condemnation, and the steps taken to date in furthering that intent, have created an actual and justiciable controversy with BNSF concerning whether the condemnation authority granted to the City under state law is preempted by ICCTA. Declaratory relief pursuant to 28 U.S.C. § 2201 is appropriate to resolve this controversy.

**WHEREFORE**, BNSF respectfully requests the following relief against the City:

A. judgment declaring that the Interstate Commerce Commission Termination Act of 1995, 49 U.S.C. § 10101 *et seq.*, preempts the City's authority to condemn BNSF's right-of-way, property, or rail facilities located within the 4th Street Project;

B. enjoining the City from commencing a condemnation action against BNSF;

C. awarding BNSF its costs in bringing this action; and,

D. any further relief as the Court deems just and equitable.

## COUNT II
### (Declaratory Judgment - FRSA Preemption)

35. BNSF incorporates by reference and re-alleges the information set forth in paragraphs 1-34.

36. The FRSA was enacted in 1970 for the express purpose of ensuring that all "laws, regulations, and orders" related to railroad safety "shall be nationally uniform to the extent practicable." 49 U.S.C. § 20106(a)(1). In vesting the Secretary of Transportation with the exclusive power to prescribe regulations for railroad safety, Congress provided that state laws, regulations, or orders would be expressly preempted

once the Secretary "prescribes a regulation or issues an order covering the subject matter of the State requirement." 49 U.S.C. § 20106(a)(2).

37. The City intends to invoke its authority under state law to obtain an order for the condemnation of railroad property with the purpose of, and having the effect of, inundating BNSF's remaining railroad operation property with stormwater drainage from the proposed 4th Street Project.

38. The United States Secretary of Transportation has prescribed railroad track safety standards at Part 213, Title 49 of the Code of Federal Regulations, which include the regulation of the drainage upon and over railroad property:

> § 213.33 Drainage. Each drainage or other water carrying facility under or immediately adjacent to the roadbed shall be maintained and kept free of obstruction, to accommodate expected water flow for the area concerned. 49 C.F.R. § 213.33.

39. The purpose and effect of the order sought by the City will substantially impact and impair BNSF's ability to comply with Section 213.33 following the fulfillment of the City's intended use, and moreover, results in the regulation of railroad safety by requiring BNSF to maintain facilities not only for its rail operations, but also to accommodate the City's intended use.

40. The United States Secretary of Transportation has issued regulations regarding the provision of drainage over and upon railroad operating property, and therefore the City, by and through its condemnation of property affecting BNSF's drainage, is expressly preempted under FRSA. 49 U.S.C. § 20106(a)(2).

41. The City's actions in seeking condemnation, and the steps taken to date in furthering that intent, have created an actual and justiciable controversy with BNSF concerning whether the condemnation authority granted to the City under state law is preempted by FRSA. Declaratory relief pursuant to 28 U.S.C. § 2201 is appropriate to resolve this controversy.

WHEREFORE, BNSF respectfully requests the following relief against the City:

A. judgment declaring that the Federal Railroad Safety Act, 49 U.S.C. § 20101 et seq., preempts the City's invocation of state law to obtain an order condemning BNSF's right-of-way, property, or rail facilities located within the 4th Street Project;

B. enjoining the City from commencing a condemnation action against BNSF;

C. awarding BNSF its costs in bringing this action; and,

D. any further relief as the Court deems just and equitable

## COUNT III
### (Declaratory Judgment – Taking would Materially Impair BNSF's Railway Operations)

42. BNSF incorporates by reference and re-alleges the information set forth in paragraphs 1-41.

43. BNSF's right-of-way that the City intends to take by condemnation is already devoted to public use.

44. BNSF is also a condemning authority under Oklahoma state law. *See* 69 O.S. § 51 et seq. Under Oklahoma law, if a city seeks to exercise its condemnation power over property of any other corporation that also has the right of eminent domain, and whose property is already devoted to public use, such power is limited and can only be

exercised in a way that is not inconsistent with the purposes for which such property already devoted to public use was taken or acquired.

45. The City's proposed taking of BNSF's right-of-way will materially impair its railway operations because the City's current proposal will collect and redirect voluminous amounts of stormwater from the proposed underpass and empty it onto BNSF's rail line and/or right-of-way that will cause erosion on BNSF's track roadbed and potentially cause embankment instability and track outages. Further, this redirection of water will limit BNSF's ability to add a third rail line without having to address the additional discharge from the 4th Street Project for which the City has no plan.

46. The City thus lacks the authority to condemn BNSF's right-of-way because such taking would materially impair BNSF's railway operations.

**WHEREFORE**, BNSF respectfully requests the following relief against the City:

A. judgment declaring that the City lacks authority to condemn BNSF's right-of-way, property, or rail facilities located within the 4th Street Project because such condemnation would materially impair BNSF's railway operations;

B. awarding BNSF its costs in bringing this action; and,

C. any further relief as the Court deems just and equitable.

## COUNT IV
**(Declaratory Judgment - The City Lacks Authority to Condemn for a State Highway)**

47. BNSF incorporates by reference and re-alleges the information set forth in paragraphs 1-46.

48. The proposed construction of State Highway 37 contemplated by the 4th Street Project will require the City to condemn land in BNSF's right-of-way.

49. Oklahoma's state highway system is created and governed by statute. *See* 69 O.S. § 101.

50. The Oklahoma legislature has appointed the State Highway Commission ("Commission") and the Oklahoma Department of Transportation, together, "custodian of the State Highway System." *Id*. §101(e).

51. To that end, "[t]he Commission shall pay the cost of or perform the act of constructing, improving or maintaining streets where such streets are a continuation of the state or federal highway system." *Id*. § 901. And "[t]he construction and maintenance of the State Highway System, and all work incidental thereto, shall be under the general supervision and control of the Transportation Commission." *Id*. § 304.

52. In contrast to the Commission and Oklahoma Department of Transportation's broad and ultimate control over state highways, municipalities have limited authority.

53. The provision establishing municipal control over streets within their geographic jurisdiction does not afford municipalities any control over state highways. 11 O.S. § 36-101. And while certain rights are reserved to municipalities with respect to state "highways under their jurisdiction" such rights do not include a right to improve or alter the highways. 47 O.S. § 15-102.

54. "Legislative grants to municipal corporations are to be strictly construed, and any reasonable doubt is to be resolved against the grant. And the enumeration of

specific powers operates to exclude those not enumerated." *City of Tulsa v. Southwestern Bell Telephone Co.*, 75 F.2d 343, 352 (10th Cir.1935).

55. Thus, municipal involvement in effecting improvements to state highways is subject to the Commission allowing same. 69 O.S. § 304. ("The Commission . . . or municipal corporation shall have the authority to enter into agreements with each other . . . ."); 11 O.S. § 36-112 ("[Commission] is authorized in its sole discretion to enter into agreements with the governing body of any municipality . . . .").

56. The authorities cited above demonstrate that State Highway 37 is within the exclusive control of ODOT, and ODOT's approval is essential before changing the grade of State Highway 37 or building a railroad bridge over it.

57. The City does not have such approval from ODOT.

58. Without such approval, the City lacks the power to condemn BNSF's right-of-way located within the 4th Street Project.

**WHEREFORE**, BNSF respectfully requests the following relief against the City:

A. judgment declaring that the City lacks the authority to condemn BNSF's right-of-way, property, or rail facilities located within the 4th Street Project on State Highway 37 because such condemnation is within the exclusive control of ODOT, and ODOT has not approved of the 4th Street Project;

B. awarding BNSF its costs in bringing this action; and,

C. any further relief as the Court deems just and equitable.

## COUNT V
## (Violation of the Takings Clause pursuant to 42 U.S.C § 1983)

59. BNSF incorporates by reference and re-alleges the information set forth in paragraphs 1-58.

60. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ." 42 U.S.C. § 1983.

61. The Fifth Amendment of the United States Constitution, incorporated to the states through the Fourteenth Amendment, prohibits the taking of private property for public use without just compensation.

62. "The 'public use' requirement is ... coterminous with the scope of a sovereign's police powers." *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 240 (1984).

63. Because the City would be acting in excess of its police powers, the City is threatening to take BNSF's private property for a non-public use, which is a violation of the Constitution.

64. In particular, the City's proposed use would violate state and federal law for the reasons described above.

65. The City is liable because the City's policymaking officers, specifically the City Manager, officially adopted and promulgated a decision to condemn BNSF's right-of-way for a non-public use, in violation of the U.S. Constitution.

**WHEREFORE**, BNSF respectfully requests the following relief against the City:

A. judgment declaring that the City lacks the authority to condemn BNSF's right-of-way, property, or rail facilities located within the 4th Street Project on State Highway 37 because such condemnation is within the exclusive control of ODOT, and ODOT has not approved of the 4th Street Project;

B. damages available under § 1983;

C. awarding BNSF its costs in bringing this action, including, but not limited to, reasonable attorney fees under 42 U.S.C. § 1988; and,

D. any further relief as the Court deems just and equitable.

## COUNT VI
### (Injunctive Relief)

66. BNSF incorporates by reference and re-alleges the information set forth in paragraphs 1-65.

67. In the absence of temporary, preliminary, and/or permanent injunctive relief, the City will take further imminent action to regulate BNSF's interstate freight rail transportation operations, including condemnation of BNSF's operating right-of-way in the area within the 4th Street Project.

68. Unless enjoined, the City's actions will cause BNSF imminent and irreparable harm for which there is no adequate remedy at law.

**WHEREFORE**, BNSF respectfully requests the following relief against the City:

A. Entry of such orders temporarily, preliminarily, and permanently enjoining the City from taking any further action seeking to condemn BNSF's right-of-way, property, or rail facilities;

B. awarding BNSF its costs in bringing this action; and,

C. for such other and further relief as is right and just.

Respectfully submitted,

/s/ Adam C. Hall

John M. Thompson OBA #17532
Adam C. Hall OBA #21202
CROWE & DUNLEVY
A Professional Corporation
Braniff Building
324 N. Robinson Avenue, Suite 100
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-7774
Facsimile: (405) 272-5924
john.thompson@crowedunlevy.com
adam.hall@crowedunlevy.com

AND

Malcolm E. Rosser IV OBA #7772
Deric J. McClellan OBA #32827
321 S. Boston Ave., Ste. 500
Tulsa, Oklahoma 74103
(918) 592-9800
(918) 592-9801 (Facsimile)

malcolm.rosser@crowedunlevy.com
deric.mcclellan@crowedunlevy.com

**ATTORNEYS FOR PLAINTIFF
BNSF RAILWAY COMPANY**